UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 11-11456-RGS

PAULINE SHEEDY

v.

LEHMAN BROTHERS HOLDINGS INC

MEMORANDUM AND ORDER ON MOTION
FOR ORDER DISMISSING COMPLAINT, CONFIRMING
ARBITRATION AWARD, AND ALLOWING COLLECTION EXPENSES

November 14, 2011

STEARNS, D.J.

Plaintiff Pauline Sheedy, a former managing director at Lehman Brothers, Inc. (Lehman), filed this action in the Suffolk Superior Court against Lehman Brothers Holdings Inc (LBHI), pursuant to section 12(a)(3) of the Massachusetts Uniform Arbitration Act for Commercial Disputes, Mass. Gen. Laws ch. 251, §§ 1-19. Sheedy seeks to vacate an arbitration award entered by the Financial Industry Regulatory Authority (FINRA). The dispute involves a $1,000,000 payment made to Sheedy when she joined Lehman's Boston office in 2006. Sheedy contends that the payment was a "signing bonus." Lehman argues that the payment was a "forgivable loan," the balance of which was to be reduced by $200,000, on each anniversary of Sheedy's employment at Lehman.

The FINRA arbitrator ruled for LBHI. She ordered Sheedy to return to LBHI the balance that remained outstanding – $800,000 – when Sheedy's employment terminated as a result of Lehman's bankruptcy. The arbitrator also awarded interest and attorneys' fees.[1] LBHI timely removed the case from Suffolk Superior Court. It now moves for a dismissal and confirmation of the arbitration award. Sheedy contends that the arbitrator exceeded her authority because the award requires her to "forfeit earned compensation" in violation of the Weekly Wage Act, Mass. Gen. Laws ch. 149, § 148. She also maintains that the award violates the Massachusetts public policy prohibiting the unlawful restraint of trade and competition. LBHI, for its part, argues that whether seen as a forgivable loan, or as a one-time incentive signing bonus, the $1,000,000 payment is not covered by the Wage Act.

## BACKGROUND

Sheedy began working for Lehman in November of 2006, under the terms of a written offer of employment. Sheedy alleges that she was induced by Lehman to leave her prior employment and bring with her a hefty client book by a compensation

---

[1] The arbitrator assessed interest at a rate of 4.69% per annum from September 19, 2008, until the award is paid. Sheedy was also found liable for LBHI's attorneys' fees in the amount of $27,665.24, and the FINRA filing and session fees. Sheedy concedes that if the arbitrator's award is sustainable as a matter of law, the award of interest and attorney's fees was required by the arbitration agreement. Opp'n Mem. at 12.

package that included a "one-time incentive signing bonus" in the amount of $1,000,000. *Id*. ¶¶ 5-7, 24. The Complaint acknowledges that Sheedy's written agreement with Lehman characterized the $1,000,000 payment as a "'forgivable loan' in the form of a promissory note." Compl. ¶ 8. According to Lehman's offer letter, which is attached to the Complaint, Sheedy was to receive a "special payment" during the first three months of her employment, and, thereafter, a monthly draw, part in cash and part in equity awards for twenty-one months after which she would be paid under the terms of a production-based compensation plan. Lehman paid Sheedy the agreed $1,000,000, when she began her employment.[2]

Sheedy had thirty years prior experience in the financial services industry when

---

[2] The offer letter stated in pertinent part:

Shortly following your start date, provided we have received your executed offer letter and promissory note, we agree to pay you a lump sum payment of $1,000,000 in the form of a forgivable loan to be forgiven in 5 equal installments of $200,000 on the first through fifth anniversary of your start date. Both the amount of the forgiven principal and accrued interest will be reported to you as income and will be subjected to all applicable taxes. If you separate from the Firm for any reason prior to the forgiveness date of this loan, you will be required to repay in full the then unforgiven principal balance plus accrued interest through the date of separation, and interest will continue to accrue at the Applicable Federal Rate following your separation date. Neither this loan nor the amounts reported to you as income with respect to this loan will be considered part of your total compensation for purposes of the Firm's Equity Award Program.

she joined Lehman. During her two years at Lehman, she brought in clients who generated in excess of $1,500,000, in fees for Lehman. However, in 2008, Lehman was forced to file for bankruptcy protection and ceased doing business in Massachusetts. As a result, Sheedy's employment with Lehman ended in September of 2008. During the marshaling of assets for the bankruptcy estate, Lehman assigned Sheedy's promissory note to LBHI.

LBHI initiated arbitration proceedings against Sheedy before FINRA, "claiming the principal balance due and owing in the amount of $800,000 plus interest and fees because her employment with [Lehman] terminated in September 2008 before the expiration of five (5) years from the date of hire." *Id*. ¶ 18. The arbitration hearing took place in Boston on June 15, 2011. Sheedy was the only witness. Her testimony was consistent with the allegations of the Complaint. On June 30, 2011, the FINRA arbitrator issued her award ordering Sheedy to repay the $800,000 loan balance, plus interest and fees.

## DISCUSSION

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must allege "a plausible entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007). Where the factual allegations of the complaint are based on a document the authenticity of which is not challenged, a court may look to the document on a

4

motion to dismiss. *See Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001); *Beddall v. State Street Bank and Trust Co.*, 137 F.3d 12, 16-17 (1st Cir. 1998).

"[Q]uestions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). A court reviewing an arbitral decision does "not sit to hear claims of factual or legal error as an appellate court does in reviewing decisions of lower courts." *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 28, 38 (1987). "Essentially, a reviewing court should refrain from intervening in all but the most limited circumstances, those in which the challenger can establish that the arbitrator's award is '(1) unfounded in reason and fact; (2) based on reasoning so palpably faulty that no judge, or group of judges, ever could conceivably have made such a ruling; or (3) mistakenly based on a crucial assumption that is concededly a non-fact.'" *Wheelabrator Envirotech Operating Servs., Inc. v. Mass. Laborers Dist. Council Local 1144*, 88 F.3d 40, 43-44 (1st Cir. 1996), quoting *Advest, Inc. v. McCarthy*, 914 F.2d 6, 8-9 (1st Cir. 1990). Massachusetts shares with the federal government a "strong public policy favoring arbitration." *Miller v. Cotler*, 448 Mass. 671, 676 (2007).

While the role of the courts in reviewing an arbitrator's award is limited,

"[w]here an arbitrator has exceeded [her] authority, however, [her] conduct is always open to judicial review." *Somerville v. Somerville Mun. Emp. Ass'n*, 418 Mass. 21, 24 (1994) (an arbitrator acts outside his authority in awarding damages for breach of a collective bargaining agreement where funds to pay for the contract have not been appropriated). An arbitral award may be challenged on a showing that the award was mistakenly based on a crucial mistaken assumption, but for which the arbitrator's award would have been different. *North Adams Reg'l Hosp. v. Massachusetts Nurses Ass'n*, 74 F.3d 346, 348 (1st Cir. 1996). An award may also be challenged by reference to a "well-defined and dominant" public policy. *United Paperworkers Int'l Union*, 484 U.S. at 43. "Arbitration, it is clear, may not 'award relief of a nature which offends public policy or which directs or requires a result contrary to express statutory provision . . . .'" *Plymouth-Carver Reg'l Sch. Dist v. J. Farmer & Co.*, 407 Mass. 1006, 1007 (1985). What public policy demands is within the judicial, not the arbitral, domain. *Exxon Corp. v. Esso Workers' Union, Inc.*, 118 F.3d 841, 844-845 (1st Cir. 1997), abrogated on other grounds by *E. Associated Coal Corp. V. United Mine Workers of Am.*, 531 U.S. 57, 61 (2000).

Sheedy argues that the arbitrator's award offends established Massachusetts public policy ("protection of earned wages and freedom of employment mobility") and violates the Massachusetts Wage Act, which bars the forfeiture of earned

compensation, including her "incentive signing bonus, . . . an essential part of her earned wages promised and paid by Lehman." Opp'n Mem. at 6.

*Wage Act*

The Wage Act provides that "no person shall by special contract with an employee or by any other means exempt himself from this section or section one hundred and fifty." Mass. Gen. Laws ch. 149, § 148. Sheedy notes that in the wake of *Wiedmann v. The Bradford Group, Inc.*, 444 Mass. 698, 703-704 (2005), Massachusetts courts have rejected any judicial narrowing of the Wage Act, and have held that limitations on the Wage Act must be left to the Legislature to avoid diminishing the remedial nature of the statute. *See Okerman v. VA Software Corp.*, 69 Mass. App. Ct. 771, 778-779 (2007). *Accord Stanton v. Lighthouse Fin. Serv., Inc.*, 621 F. Supp. 2d 5, 14-16 (D. Mass. 2009).

Sheedy relies on *Weems v. Citigroup Inc.*, 453 Mass. 147 (2009), as "instructive." In *Weems*, the Supreme Judicial Court was asked, by way of a certified question, whether a forfeiture provision in a Citigroup compensation plan violated the Wage Act. Under the Citigroup plan, an employee forfeited a promised stock bonus if, prior to the vesting period, he or she voluntarily left employment at Citigroup or was terminated for cause. The Court found that the stock bonus was exempt from the Wage Act because the payment of the bonus to the employee was discretionary.

Sheedy argues that "implicit in the *Weems* holding is that protected 'wages' covered by the Wage Act includes any payment which an employer is obligated to make to an employee, including earned, non-discretionary bonus pay." Opp'n Mem. at 7. Sheedy argues that once she signed the Offer Letter and the Note, Lehman was bound to make the $1,000,000 payment, a nondiscretionary deed subject to the Wage Act. However, the in the *Weems* opinion, the Supreme Judicial Court held that

> it is clear from the governing documents supplied by the parties that the awards of stock under these programs were awards of restricted stock. In other words, this part of the compensation for participants in the bonus and branch manager programs was not only discretionary, but it also had an important contingency attached to it: an employee who received such an award would receive the full benefit of the stock (i.e., the restriction would be lifted and the stock would vest fully) only if the employee remained with the company for the defined period after the award. The only thing they "earned" as a result of their bonus was stock that had limited value to them until it vested. *See generally Harrison v. NetCentric Corp.*, 433 Mass. 465, 466, 473, 744 N.E.2d 622 (2001) ("The defendants did not deprive the plaintiff of any income that he reasonably earned or to which he was entitled. His shares [of stock] vested over time only if he continued to be employed; thus, the unvested shares are not earned compensation for past services, but compensation contingent on his continued employment").

*Weems*, 453 Mass. at 154.

Like the unvested shares of stock in *Weems*, Sheedy's retention of the incentive payment was contingent upon her continued employment. Although the entire amount of the alleged bonus was advanced to Sheedy as a loan, the agreed-upon forgiveness

schedule deferred these earnings over a five year period with concomitant tax deferral benefits for Sheedy. Her accepted offer and the Note clearly made forgiveness of the entire amount contingent upon her remaining employed at Lehman for five years.[3] Consequently, that portion of the payment which remained owing at the time of Sheedy's termination was never "earned" within the meaning of the Wage Act. The law is clear that incentive or other bonus compensation is outside the scope of the Wage Act unless it qualifies as "commissions" that are ascertained and due.[4] *See Okerman*, 69 Mass. App. Ct. at 778-779 (vacating the dismissal of a Wage Act claim for unpaid commissions in addition to a sizeable base salary that were "definitely determined" and "due and payable"); *compare NaviSite, Inc. v. Cloonan*, 2005 WL 1528903, at *13-14 (Mass. Super. Ct. May 11, 2005) (A "retention bonus . . . lie[s] well outside the [Wage] statute's reach.").

   *Public Policy*

---

[3] Sheedy's accepted offer stated that "that the $1,000,000 payment would be forgiven in 5 equal installments on the first through fifth anniversaries of [her] start date." Compl. - Ex. 1. The Note confirmed that both the amount of forgiven principal and forgiven interest would be reported to Sheedy as income, and obligated her to pay Lehman on each forgiveness date an amount equal to the applicable withholding tax with respect to the amount being forgiven. *Id.* - Ex. 2 ¶ 6.

[4] Sheedy's Letter of Employment states that "[n]either this loan nor the amounts reported to you as income with respect to this loan will be considered part of your total compensation for purposes of the Firm's Equity Award Program." Compl. - Ex. 1.

Sheedy also argues that the arbitration award is void *ab initio* because forfeiture of the payment constitutes "an unlawful penalty intended to punish Sheedy if she chose to leave Lehman and compete, and is not related to protecting any legitimate business interest of Lehman." Opp'n Mem. at 11. The short answer is that a forgivable loan, excused in equal installments over five years to encourage loyalty to an employer, has no relationship to a noncompetition agreement that restricts an employee's ability to work in the same field within a given geographic area. Sheedy was free to leave Lehman at any time and take whatever competitive position she chose, so long as she was willing to forgo the generous terms of the loan.

*Attorney's Fees*

Finally, if the court decides that the arbitration award is enforceable, Sheedy asks that the court deny Lehman an award of the costs it has incurred in defending this action. Sheedy argues that

> Lehman has already been awarded substantial fees and costs, and Ms. Sheedy was also required to pay substantial costs associated with the arbitration proceeding. Ms. Sheedy has already suffered enough considering the facts and circumstances surrounding her employment with Lehman and sudden loss of her job in 2008 resulting solely from the Lehman bankruptcy caused by Lehman's business practices. Indeed, Ms. Sheedy was approximately two months away from forgiveness of an additional $200,000 when she lost her job, and received no benefit of 10 months of work. Ms. Sheedy brought this action in good faith to vindicate her rights under Massachusetts law and in accordance with Massachusetts public policy.

10

*Id*. at 12.

"When a contractual fee provision is included by the parties, the question of what fees are owed 'is ultimately one of contract interpretation,' and [the court's] primary obligation is simply to honor the agreement struck by the parties." *AccuSoft Corp. v. Palo*, 237 F.3d 31, 61 (1st Cir. 2001), quoting *MIF Realty, L.P. v. Fineberg*, 989 F. Supp. 400, 402 (D. Mass. 1998). In signing the Note, Sheedy "promise[d] to pay and indemnify Lehman for all expenses incurred, including attorneys' fees, in connection with the collection of any amount due under the Note. The amount the Borrower may be liable for under this paragraph shall be the greater of the actual expenses incurred by Lehman or 15% of the unpaid balance of the Note at the time any proceedings are instituted for collection." Compl. - Ex. 2 ¶ 3. The arbitrator awarded LBHI its "actual collection expenses." LBHI was bound to defend this action in order to "collect" its arbitration award. Accordingly, I agree with LBHI that it is entitled to recover from Sheedy the attorney's fees and expenses incurred in defending this case. *See* Fed. R. Civ. P 54(d)(2).

## ORDER

For the foregoing reasons, LBHI's motion to dismiss the Complaint, confirm the arbitral decision, and award "collection expenses" is <u>ALLOWED</u>. LBHI will have fourteen (14) days from the date of this Order to submit a request for attorney's fees

and a proposed form of judgment.

                SO ORDERED.

                /s/ Richard G. Stearns

                _____
                UNITED STATES DISTRICT JUDGE